IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LINDSEY GRASIS; DOROTHY GRASIS; MICHAEL GRASIS, | |
| Plaintiff, | |
| v. | CIV. NO.: 13-1226 (PAD/SCC) |
| WIN ACCESS, INC.; CONSEJO DE TITULARES DEL CONDOMINIO ASHFORD IMPERIAL; ET AL., | |
| Defendant. | |

## REPORT AND RECOMMENDATION

In this Report and Recommendation I address third party defendant, Worcester Polytechnic Institute's ("WPI") motion for summary judgment and defendant/cross-defendant MAPRE PRAICO Insurance Company's ("MAPFRE") motion for judgment on the pleadings. After discussing the factual and procedural background, as well as the applicable standard, I

recommend that WPI's motion be granted, and MAPFRE's motion be granted in part and denied in part.

### I. Factual Background

Lindsey Grasis was a 20 year old student of WPI participating in a study-abroad program in Puerto Rico. This action arises from the rape of Lindsey on April 14, 2012, at the Ashford Imperial Condominium, where she was residing as part of the program. The aggressor was William Rodriguez, who was found guilty in a Court of the Commonwealth of Puerto Rico of aggravated sexual assault and sentenced to twenty years of imprisonment. Rodriguez was an employee of WIN Access, Inc., ("WIN"), a security agency hired by Consejo de Titulares Ashford Imperial Condominium, to provide security services. On the day of the events Rodríguez was stationed in the lobby of the condominium and convinced Lindsey to accompany him to the rooftop of the 26-story high Ashford Imperial, where he raped her against the railing. Lindsey and her parents seek damages for their pain and suffering as a result of the rape.

## II. Procedural Background

Plaintiffs Michael, Dorothy and Lindsey Grasis claim damages in the Second Amended Complaint, Docket No. 71, from defendants: WIN;  Consejo de Titulares Condominio Ashford Imperial, ("Consejo"); Sea Breeze Apt. Rentals, Inc., ("Sea Breeze"); Cooperativa de Seguros Multiples, ("Cooperativa"); Universal Group, Inc., ("Universal") and MAPFRE, stemming from the sexual assault Lindsey suffered while living in the Ashford Imperial Apartment Building. Consejo filed cross claims against MAPFRE, Win, and Cooperativa, Docket Nos. 72, 73, and 113, and filed a Third Party Complaint against WPI, Docket No. 74.  Defendants and cross defendants  answered the Second Amended Complaint, and Cross Claims. Docket. Nos. 75, 83, 96, 97, 106, 107, 122, 183, 223 and 224.  WPI answered the Third Party Complaint. Docket No. 115.

A myriad of dispositive motions are pending but in this Report and Recommendation I will be addressing the motion for judgment on the pleadings by MAPFRE, Docket Nos. 121,

146, 216 and 293 and the motion for summary judgment by WPI against Consejo, Docket No. 306. I will review these motions, the opposition thereto, and applicable statements of uncontested facts ("SUFs") as to each and make a recommendation.

### III. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.) The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor.

*Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves,* 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)).

Finally, as this is a diversity case, the court is bound to apply Puerto Rico law to all substantive matters. *Vázquez-Filipetti v. Banco Popular*, 504 F.3d 43, 48 (1st Cir. 2007).

**IV. Factual Findings**

The following factual findings are taken from the parties' SUF's and supporting documentation. Upon reviewing the record, the court finds the following facts as undisputed:

1. In April, 2012, Lindsey Grasis was a third-year student at WPI, a university located in Massachusetts, and was

participating in a study-abroad program in Puerto Rico. Docket No. 354-1, Deposition of WPI, pg. 13, lines 1-16, pg. 20, lines 1-14.

2. During her stay in Puerto Rico, Lindsey was housed at the Ashford Imperial Condominium. Docket No. 354-1, Deposition of WPI, pg. 13, lines 14-16.

3. The Ashford Imperial is a multi-story building in Condado, Puerto Rico, containing apartment units, retail stores, and common areas. Docket No. 354-2, Deposition of Consejo de Titulares, pg. 17, lines 20-21, pg. 36, lines 13-23 and pg. 48, lines 4-25.

4. The roof of the building is a common element. Docket No. 354-2, Deposition of Consejo de Titulares, pg. 48, line 25, pg. 49, lines 1-2.

5. At the time of the events, Consejo de Titulares was an association composed of the owners of Ashford Imperial and was responsible for the good governance of the condominium. Docket No. 354-2, pg. 17, lines 15-22, pg. 33, lines 1-16.

6. WPI leased apartments at the Ashford Imperial through Sea Breeze Apt. Rentals, beginning in the 1990s, up to and including 2012, for the purpose of student housing. Docket No. 354-5, Sea Breeze Answer to Plaintiffs' First Set of Interrogatories, at pg. 9.

7. MAPFRE issued a General Liability Insurance Policy to Consejo, which was in effect from April 1, 2012, until April 1, 2013. Docket No. 121-1.

8. On October 15, 2009, WIN and Consejo executed a "Contrato de Servicios Profesionales" ("Professional Services Contract"), which was in full force and effect on April 14, 2012.Docket No. 354-18, Certified Translation of Professional Services Contract.

9. The Professional Services Contract states that WIN shall provide to Consejo "security and protection services". Docket No. 354-18 at page 1.

10. On April 14, 2012, William Rodríguez was the security guard on duty at the Ashford Imperial. Rodríguez was

employed by Win Access. Docket No. 354-13, pg. 2, Docket Nos. 71 and 83, at ¶ 34; Docket No. 324-2, pg. 116, lines 19-21.

11. On April 14, 2012, Lindsey Grasis returned to the Ashford Imperial after an evening out. Lindsey slipped while walking alone through the lobby and was approached by Mr. Rodríguez. He helped her to her feet and offered to take her to the roof of the condominium so that she could see the view of the city. Docket No. 354-10, Deposition of Lindsey Grasis, pg. 95-103.

12. Rodríguez pushed Lindsey against a guardrail at the edge of the roof of the Ashford Imperial, which was more than twenty-six stories high, and forcibly raped her. Docket No. 354-10, Deposition of Lindsey Grasis, pgs. 120-131.

13. On December 11, 2012, Rodríguez was convicted of the aggravated rape of Lindsey Grasis by a jury in the state court of Puerto Rico. Docket No. 354-12, Judgment of William Rodríguez.

## V. Analysis

### A. WPI's Motion for Summary Judgment

WPI is a third-party defendant brought to the action by co-defendant Consejo. Docket No. 74. WPI is the university where Lindsey Grasis was a third-year student. It was WPI's Interactive Qualifying Project ("IQP) that brought Miss Grasis to Puerto Rico. According to the Third-Party Complaint, WPI's liability rests on its alleged failure to notice the "pattern of behaving, alcohol consumption and other disruptive conduct" exhibited by Grasis during her stay in Puerto Rico. Docket No. 74 at ¶ 11. The Third-Party Complaint avers that WPI's on-site representative should have adequately supervised and monitored Ms. Grasis during her stay. Consejo blames WPI's lack of supervision, in part, for the sexual assault that Ms. Grasis suffered at Ashford Imperial.

WPI moved for partial summary judgment on the basis that the Third Party Complaint is untimely. Docket No. 306. WPI averred that since plaintiffs did not sue WPI within the one-

year statute of limitations for tort actions, Consejo's third party contribution claims against WPI also expired.

Because this court sits in diversity, we must apply the "substantive" law of the forum state. *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 772–73 (1st Cir.1994). Under Puerto Rico law, the applicable statute of limitations for tort actions, such as this one, is one year. PR ST T. 31 § 5298.  Puerto Rico accrual rules dictate that the limitation period begins to run when the injured party knew or should have known of the injury and of the identity of the likely tortfeasor. *Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez & Cía., de Puerto Rico, Inc.*, 142 F.3d 1, 3 (1st Cir. 1998)(citing to *Colon Prieto v. Geigel*,15 P.R. Offic. Trans. 313 , 327 (1984)). Puerto Rico courts also recognize the concept of "deemed knowledge" whereby a plaintiff is "deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action." *Alejandro-Ortiz v. Electric Power Authority*, 756 F.3d 23,

27 (1ˢᵗ Cir. 2014)(citing *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir.1997))

Plaintiffs filed the original complaint on March 18, 2013, less than a year after Ms. Grasis was assaulted. Docket No. 1. They did not include WPI as a defendant, even though they were certainly aware of the relationship between Lindsey Grasis and WPI, and the nature of her educational activities in Puerto Rico. Despite later amendments, plaintiffs never incorporated claims against WPI. Therefore, it is clear that plaintiffs claims against WPI are barred. Consejo agrees as much. Docket No. 320 at pg 5. The issue, then, is whether the Third Party Complaint is equally barred.

WPI relies in the Puerto Rico Supreme Court cases of *Fraguada Bonilla v. Hosp. Aux. Mutuo* and *Maldonado Rivera v. Suarez*. *Fraguada Bonilla* overturned the doctrine of *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992),[1] and adopted the

---

**1.**   *Arroyo* established that the tolling of the statute of limitations as to one co-defendant, tolled the statute of limitations as to the others that were solidarily responsible for plaintiff's injuries.

norm of *in solidum* responsibility for statute of limitations controversies in tort cases with several tortfeasors. Pursuant to *Fraguada Bonilla*, where the injury is caused by multiple co-defendants, the plaintiff may still recover from each co-defendant the totality of the damages, but must toll the statutory period as to each co-defendant separately, within the one-year period for tort actions under Puerto Rico law. *Fraguada Bonilla,* 186 D.P.R. at 389. A few years later, in *Maldonado Rivera v. Carlos Suarez*, 195 D.P.R. 182, 187 (2016), the court expanded on the *Fraguada Bonilla* ruling and dismissed a third party complaint against several tortfeasors on statute of limitations grounds.

In *Maldonado Rivera,* the Court was confronted with the exact question raised here: is a tortfeasor liable to other tortfeasors on a contribution suit brought after the one-year statute of limitations for tort actions? The *Maldonado Rivera* court said no. The court reasoned that, if plaintiff's allegations against one tortfeasor were time-barred, none of the other tortfeasors who were timely sued could bring a third party

complaint against that tortfeasor. *Maldonado Rivera*, 195 D.P.R. at 213.  As a consequence, the tortfeasor who was not timely brought could not be sued by the plaintiff, or by the other tortfeasors in a reimbursement action.

By the same token, the plaintiff may not recover for the portion of responsibility attributable to the tortfeasor that was not timely sued. Once liability is established, the portion, if any, attributable to that tortfeasor, should be deducted from the totality of the damages awarded and the plaintiff would receive indemnification for the value of the resulting differ-ence. *Id.* at  210-11.[2]

Consejo opposed WPI's motion for partial judgment. Docket No. 320. It averred that Puerto Rico law treats a contribution action differently than an original tort action, for statute of limitations purposes and that the right to contribu-tion does not arise until a joint tortfeasor has made payment to the plaintiff. Therefore, Consejo concluded, its claims against

---

**2.**  In fact, the *Maldonado-Rivera* opinion provides a hypothetical example illustrating how the mathematical exercise would be carried out.

WPI cannot be time-barred  because the right to contribution has not yet become ripe. Consejo's concerns, however, were directly addressed in *Maldonado Rivera*. There, the court expressed that  to allow a party to bring a third-party complaint past the statutory period for the original complaint, and perhaps even years after, would violate the principles of *Fraguada*. See  *Maldonado Rivera*, 195 D.P.R. at 209. It was precisely to reconcile its ruling with the long-standing principles of contributory negligence that the court explained how the allocation of damages to the party that was not sued would be reduced from the total damages award to plaintiffs.

For the reasons explained above, and in light of the rulings of *Fraguada* and *Maldonado-Rivera*, I recommend that the Third-Party Complaint against WPI be dismissed.

### B. MAFPRE's Motion for Judgment on the Pleadings

MAPFRE issued a Commercial General Liability Insurance Policy (the "Policy") in favor of Consejo. The Amended Complaint alleges that, as insurer of Consejo, MAPFRE is directly liable to plaintiffs for the damages that Ms. Grasis

suffered as a result of the sexual assault. Docket No. 46.[3] After
MAPFRE formally denied coverage for the incident, Docket
No. 72 at ¶ 4, Consejo filed a cross claim against MAPFRE
alleging responsibility to indemnify and pay legal fees, in the
event of an adverse judgment. *See* Docket No. 72. MAPFRE
then filed the Motion for Judgment on the Pleadings before the
court. Docket No. 121.[4] The motion was denied without
prejudice to be renewed at the summary judgment stage.
Docket No. 146. The court, however, later reconsidered its
ruling and held that it would entertain the merits of the Motion
for Judgment on the Pleadings. Docket No. 216. Sometime
after, plaintiffs supplemented the Motion for Summary
Judgment with a recent case from the Puerto Rico Court of

---

**3.** Pursuant to Puerto Rico's direct action statute, PR ST T. 26 § 2003(1),
"[a]ny individual sustaining damages and losses shall have, at his
option, a direct action against the insurer under the terms and
limitations of the policy, which action he may exercise against the
insurer only or against the insurer and the insured jointly."

**4.** Plaintiffs and Consejo filed oppositions to MAPFRE's motion for
judgment on the pleadings. Docket Nos. 129 and 123. MAPFRE replied.
Docket Nos. 128 and 132.

Appeals. Docket No. 259. In response, MAPFRE filed a supplemental motion to Docket Nos. 121 and 132. Docket No. 293. Both Consejo and plaintiffs filed a response to MAPFRE's supplemental motion, Docket Nos. 294 and 295.

Where, as here, a motion for judgment on the pleadings contains matters outside the pleadings, the motion shall be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6); see also, *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 18-19 (1st Cir. 1992)(interpreting the text of Rule 12(b)(6) and holding that "the test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision.").

MAPFRE's central argument is that the Policy contains an abuse and molestation exclusion that precludes coverage for the claims asserted in the Second Amended Complaint against its insured, Consejo. Such exclusions are not uncommon[5] and

---

**5.** *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 97 (1st Cir. 2012)("Exclusions of this type for sexual or physical abuse or molestation are not uncommon for these types of insurance policies for those who have care of others.")

in order to consider its applicability, we must look to the language of the contract itself. *See* Article 11.250 of the Insurance Code of Puerto Rico, PR ST T. 26 § 1125; see also, *Lawes v. Municipality of San Juan*, No. CV 12-1473 (DRD), 2016 WL 297431, at *7 (D.P.R. Jan. 22, 2016)(Insurance contracts are governed by the Puerto Rico Insurance Code, which instructs courts to construe them according to their particular terms and conditions).  When construing the terms of an insurance policy contract, the policy's language shall be interpreted according to its common and general usage. *See Pagán Caraballo v. Silva*, 122 P.R.Dec. 105 (1988); *López & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 64 (1st Cir. 2012). Puerto Rico law views insurance contract as contracts of adhesion and, consequently, construes them liberally in favor of the insured. *Nahan v. Pan American Grain Mfg. Co., Inc.*, 62 F.Supp. 2d 419, 423 (D.P.R. 1999)(citing *Rosario v. Atlantic Southern Ins. Co. of P.R.*,  95 P.R. Offic. Trans. 742 (1968)). However, "the doctrine does not compel the exclusion clause to be construed in favor of the insured when such clause is clear and unambiguous against the

insured." *See In re Reinforced Earth, Co.*, 925 F.Supp. 913, 918 n. 21 (D.P.R. 1996)(citations omitted).

With that statutory framework in mind, the court now turns to the specific language of the MAPFRE policy. The"abuse and molestation" exclusion reads as follows:

### ABUSE AND MOLESTATION EXCLUSION

[...]

This insurance does not apply to "bodily injury,""property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of the insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

e. Retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

*See* Docket No. 121-1, at pg. 117.

We think the language of the Policy is clear and unambiguous, as it specifically precludes coverage arising from 1) the actual or threatened abuse or molestation by anyone while in care, custody or control of the insured, including 2) the negligent employment, investigation, supervision, reporting or retention of a person for whom the insured is legally responsible, and whose conduct would be excluded by the abuse or molestation exclusion. Docket No. 121 at pg.14.

Even adopting the most restrictive interpretation of this clause, as we are required to do, each of the requisite prongs are met in this case. The first portion of the clause excludes coverage for any bodily or personal injury caused by actual abuse to a person "while in the care, custody or control of the insured." It is undisputed that plaintiff Lindsey Grasis suffered bodily and personal injury and that the injury was caused by

William Rodríguez. It is also undisputed that Mr. Rodríguez was a security guard at the Ashford Imperial.[6]

The parties, however, debate whether the "care, custody or control" requirement is met. MAPFRE adduces that Lindsey was under the "care, custody or control" of Ashford Imperial when Rodríguez sexually assaulted her, particularly since she should be considered a "hotel guest" and, thus, subject to a higher degree of care on behalf of the innkeeper. Docket No. 293.

In contrast, plaintiffs aver that there is a controversy of fact as to whether Lindsay Grasis was under the "care, custody or control" of Ashford Imperial and point to a a recent case from the Puerto Rico Court of Appeals, which they claim resolved the issue conclusively. In *Perales-Cruz v. Villa Asociado Jenaro Cortes*, 2015 WL 3488871 (TCA, April 30, 2015), a woman that was sexually assaulted by one of the maintenance workers of the building complex where she lived filed suit against several

---

**6.**   In analyzing coverage, the claims stated in the complaint must be taken "as pleaded." *PFZ Properties, Inc. v. General Accident Ins. Co.*, 136 D.P.R. 881, 895 (1994).

defendants, including the apartment building, the building's management company, and MAPFRE, as insurer of both. *Perales-Cruz*, 2015 WL 3488871, at *1. MAPFRE filed a motion for summary judgment alleging that the policy contained an abuse/molestation exclusion. *Id*. The court of first instance denied MAPFRE's motion for summary judgment, and MAPFRE appealed. *Id.*, at * 2.

In a succinct opinion, the Court of Appeals confirmed the decision of the lower court, stating that it found the interpretation of the lower court "reasonable." *Id.*, at * 6. The Court of Appeals focused on the lower court's conclusion that Ms. Cruz was not under the "care, custody and control" of the insured entities because "she was free to come and go," and "had absolute freedom to determine who she let into her apartment."*Id.,* at *2 n. 5.

From the scarce information we could gather about the underlying facts, we conclude that *Perales-Cruz* is distinguishable. The key element that separates this case is that Ms. Grasis was not assaulted in her apartment, but on the roof of the building, a communal element. Docket No. 71, at ¶¶ 51-52.

Pursuant to Puerto Rico's Condominium Law, the roof of a building is a "general and necessary common element" that is not susceptible to individual ownership. PR ST T. 31 § 1291i(a); *see also*, *Ferrer v. Rocca Development Corporation*, 20162016 WL 6989414, at *27 (P.R. Court of Appeals October 13, 2016)("[t]he roof is a necessary common element that cannot be owned, possessed, or controlled exclusively by one tenant.").[7]  Therefore, the view that a tenants' gate keeping power over her apartment diminishes the liability attributable to a landlord for whatever happens  inside–a perspective reflected in *Perales-Cruz*-cannot stand where access to the site of the incident is not under her sole control.[8] Judging from these circumstances, we

---

**7.** In fact, under the Condominium Law, the Director of the Condominium Association or the Board of Directors, is charged with overseeing "everything relating to the good government, administration, surveillance, and operation of the regime and especially in regard to the things and *elements of common use* and the general services, and to make, for such purposes, the proper warnings and admonitions to the co-owners."PR ST T. 31 § 1293b-4.

**8.** Moreover, this not the case of a random sexual attack perpetrated by an intruder, *see Choy v. First Columbia Management, Inc.,* 676 F.Supp. 28, 30 (D.Mass. 1987), Ms. Grasis' attacker was the building's own security officer.

find that  the holding of *Perales-Cruz* is inapposite to the facts presented here.

Rather than following *Perales-Cruz*, we focus on *Valley Forge*, 670 F.3d at 99, where the First Circuit engaged in a similar analysis and looked to the plain meaning language of "care" as being under the "charge, supervision, management: responsibility for or attention to safety and well-being." Furthermore, when used in abuse or molestation exclusions, the plain and ordinary meaning of the term must be applied. *Id*. at 103. Based on these principles, the court ultimately held that the victim was in the care of the insured as "a long-term patient" and affirmed the application of the exclusion clause. *Id*. at 105.

Plaintiffs are eager to discard *Valley Forge* because they claim "it interprets Massachusetts law" and is thus, not binding or persuasive. In *Valley Forge*, however, the First Circuit relied on other sources, besides Massachusetts law, to conclude that "physical dominion" is not a *sine qua non* of the abuse/molestation exclusion. *Valley Forge*, 670 F.3d at 99-100 (citing 9 Couch on Insurance § 126:22 (2011)).  Moreover, much

of the Massachusetts canons of construction applied by the *Valley Forge* court are similar, if not identical, to Puerto Rico's. For example, in *Valley Forge*, the court followed Massachusetts' rules of statutory construction in giving the term "care" its ordinary and plain meaning. *Valley Forge*, 670 F.3d at 99. In that sense, Puerto Rico law follows the same interpretation guidelines. *In re Reinforced Earth, Co.*, 925 F.Supp. at 918 n.21 (citations omitted)("It is a well established doctrine in Puerto Rico that when construing the terms of any contract, including an insurance policy contract, the language used shall be interpreted according to its common and general usage."). Likewise, the *Valley Forge* opinion points to the Massachusetts' rule that "[e]very word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." *Valley Forge*, 670 F.3d at 99 (citations omitted). That canon of construction follow along the lines of Puerto Rico's rule mandating that the courts read contract provisions in relation to one another, giving unclear provisions the meaning which arises from considering all provisions together. *See Entact Services, LLC v. Rimco, Inc.*,

526 F.Supp. 2d 213, 221 (D.P.R. 2007) (citing 31 P.R. Laws Ann. § 3475; *Marina Aguila v. Den Caribbean, Inc.*, 490 F.Supp.2d 244, 248 (D.P.R.2007)).

Given the undisputed facts previously mentioned, we find that Ms. Grasis was under the "care, control, and supervision" of Ashford Imperial for purposes of the Policy exclusion.

Lastly, Consejo avers that even if the court finds that the policy exclusion is applicable, MAPFRE should abide by its duty to provide legal representation. An insurer's obligation to provide legal representation to the insured is more ample than the obligation to indemnify for damages. *Echandi Otero v. Stewart Title*, 174 D.P.R. 355, 377 (2008). The defense and indemnity duties are separate and have differing tests. The duty to defend "is measured by the allegations in a plaintiff's complaint-if any of these allegations, read liberally, state facts that would be covered by a liability policy if proven true, then the insurer must provide a defense for the insured defendant." *Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*, 410 F.3d 2, 15-16 (1st Cir.2005). In addition to making claims against Consejo for negligently hiring WIN and for failing to run background

checks on the security guards, the Second Amended Complaint avers that Consejo faulted on a myriad other issues, such as failing to install cameras and proper lighting on the roof, and making sure that the cameras on the building were working properly (it is alleged that one of the cameras in the elevators was disconnected on the night of the incident). Docket No. 71 at ¶ 71-73. Those claims are not directly related to the incident involving Rodríguez and, therefore, could provide an independent basis for establishing Consejo's negligence. *See De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc.*, 160 F. 3d 839 843 (1st Cir. 1998)(citing *Colmenares Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1107 (1st Cir.1986) and *Paredes v. Hilton Int'l of Puerto Rico*, 896 F.Supp. 223, 229 (D.P.R.1995)). (Puerto Rico law requires condominiums to maintain their premises "in a reasonably safe condition.").Therefore, we hold that MAPFRE has a duty to defend until it can establish that all the claims against Consejo arose as a result of the illegal acts committed by Rodríguez.

Based on the above, we recommend that MAPFRE's motion for judgment on the pleadings be granted as to the coverage issue, and denied on the duty to defend claims.

## VI. Conclusion

For the reasons previously discussed, we recommend that WPI's Motion for Summary Judgment be granted because the Third-Party claims against it are time-barred. We also recommend that summary judgment be granted in favor of MAPFRE as to the coverage issue, but denied as to its duty to defend claims.

IT IS SO RECOMMENDED.

The parties have ten days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 8th day of March, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE