IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LINDSEY GRASIS; DOROTHY GRASIS; MICHAEL GRASIS, | |
| Plaintiff, | CIV. NO.: 13-1226 (PAD/SCC) |
| v. | |
| WIN ACCESS, INC.; CONSEJO DE TITULARES DEL CONDOMINIO ASHFORD IMPERIAL; ET AL., | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Co-defendant WIN Access, Inc. ("WIN") was in charge of providing security to Ashford Imperial Condominium during the time that Lindsey Grasis was raped on the roof of the building. Cooperativa de Seguros Múltiples ("Cooperativa"), was WIN's insurer. Cooperativa filed two motions for summary judgment. Docket Nos. 326, 327 and 347. For the reasons set forth herein, we recommend that they be granted in part and denied in part.

## I. Factual Background

Lindsey Grasis was a 20-year-old student of Worcester Polytechnic Institute ("WPI") participating in a study- abroad program in Puerto Rico. This action arises from the rape of Lindsey on April 14, 2012, at the Ashford Imperial Condominium, where she was residing as part of the program. The aggressor was William Rodríguez, who was found guilty in a Court of the Commonwealth of Puerto Rico of aggravated sexual assault and sentenced to twenty years of imprisonment. Rodríguez was an employee of WIN, a security agency hired by Consejo de Titulares of the Ashford Imperial Condominium, to provide security services. On the day of the events Rodríguez was stationed in the lobby of the condominium and convinced Lindsey to accompany him to the rooftop of the 26-story-high Ashford Imperial Condominium, where he raped her against the railing. Lindsey and her parents seek damages for their pain and suffering as a result of the rape.

## II. Procedural Background

I will recount only the facts pertinent to the motions for summary judgment now before the court. In the original com-

plaint, plaintiffs Michael, Dorothy and Lindsey Grasis claimed damages against defendants Consejo de Titulares Condominio Ashford Imperial, ("Consejo"), WIN, and Sea Breeze Apt. Rentals, Inc., ("Sea Breeze"). After WIN filed a Third Party Complaint against Cooperativa, Docket No. 36, plaintiffs amended the complaint to include Cooperativa, as WIN's insurer. Docket. 46. Thereafter, Consejo filed cross claims against WIN and Cooperativa, Docket Nos. 73 and 113.

Cooperativa filed a motion for summary judgment and memorandum of law alleging that the policy issued to WIN does not provide coverage for the incident that gave rise to this case. Docket Nos. 326 and 327. Cooperativa sought dismissal of all the claims against it made in the Second Amended Complaint, the Third Party Complaint, and the Cross-Claim. *Id*. Cooperativa later filed a Second Motion for Summary Judgment. Docket No. 347. Consejo and plaintiffs opposed. Docket Nos. 350 and 353. Cooperativa replied. Docket No. 369.

On August 29, 2016, Cooperativa supplemented its first motion for summary judgment with new evidence. Docket No. 361. On

that same day, Cooperativa filed a motion under Rule 59(e) to complement and substitute certain exhibits included in its First Motion for Summary Judgment. Docket No. 363. Plaintiffs filed an opposition to Cooperativa's motions at Docket Nos. 361 and 363. Docket No. 367. The Court advised Cooperativa that it would consider the evidence as part of its analysis of the motions for summary judgment. Docket Nos. 395 and 396.

I will review each pending motion, opposition thereto, any supplemental motion and statement of uncontested facts as to each, ("SUF"), and make a recommendation as to the disposition of each.

### III. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.) The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.*").

Finally, as this is a diversity case, the court is bound to apply Puerto Rico law to all substantive matters. *Vázquez-Filipetti v. Banco Popular*, 504 F.3d 43, 48 (1st Cir. 2007).

### IV. Factual Findings

The following factual findings are taken from the parties' SUF's and supporting documentation. The Court made some previous

findings of fact in its Report and Recommendation at Docket No. 387, which shall be incorporated by reference here. The Court makes the following additional findings of fact, specific to the claims made by Cooperativa in its two motions for summary judgment:

**Cooperativa's Policy**

1. Cooperativa issued a "Commercial General Liability" insurance policy to WIN. *See* Policy and Endorsements, Docket Nos. 363-5.

2. The policy covered the period from March 11, 2012, until March 11, 2013. *See* Policy and Endorsements, Docket No. 363-5, at pg. 5.

3. The policy includes an abuse and molestation exclusion, which states:

**ABUSE AND MOLESTATION EXCLUSION**

[...]

This insurance does not apply to "bodily injury,""property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of the insured,

or

2.  The negligent:

    a. Employment;

    b. Investigation;

    c. Supervision;

    d. Reporting to the proper authorities, or failure to so report;

or

    e. Retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

*See* Policy and Endorsements, Docket No. 363-8, at pg. 10.

    4. The Policy also includes the following provision:

**"SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS**

...

2.   Duties in the Event of Occurrence, Offense, Claim or Suit

...

C.  You and any other insured must:

(3) Cooperate with us in the investigation and settlement of the claim or defense against the "suit;"...

*See* Policy and Endorsements, Section IV, paragraph 2 (c)(3), Docket No. 347-2, at pg. 1.

    5. On April 8, 2013, Cooperativa sent WIN a letter stating that

the Policy did not provide coverage for the incident pursuant to the Policy's Abuse and Molestation Exclusion. *See* Letter from Cooperativa to WIN, Docket No. 347-3.

6. On July 13, 2013, WIN filed a Third Party Complaint against Cooperativa stating that Cooperativa had denied coverage under the Policy. Docket No. 36.

### Rodríguez' background

7. Prior to working as a private security guard, Rodríguez was a state police officer in Carolina, Puerto Rico, from 2001 to 2011. *See* Puerto Rico Police Department ("PRPD") Administrative Record (Certified Translation), Docket No. 354-14.

8. When he was discharged from the PRPD in 2011, Rodríguez had several complaints in his record, including: domestic violence (2004 and 2010); negligence (2006 and 2007); illegal or unreasonable search and seizure (2008); and immoral behavior (2011). *See* PRPD Administrative Record (Certified Translation), Docket No. 354-14.

9. Rodríguez was arrested on August 2011, after selling approximately 200 nine caliber ammunition to an undercover

agent. Rodríguez was discharged from the Police force following his arrest. *See* PRPD Administrative Record (Certified Translation), Docket No. 354-14, at pgs. 5-7.

10. The news of the arrest of Rodríguez were covered by local newspapers. *See* El Nuevo Día news clip, Docket No. 354-15.

11. In February 2012, Rodríguez was convicted of violating Puerto Rico's Law of Firearms and sentenced to two years' probation. *See* Amended Judgment in Crim. No. HSCR201101497 (Certified Translation), Docket No. 354-16.

12. Pursuant to a Negative Certification issued on July 15, 2016, Rodríguez, as of that date, was not registered as a security guard. *See* Negative Certificate, Docket No. 354-17.

### V. Analysis

### A. First Motion for Summary Judgment

Plaintiffs claim that Cooperativa, as WIN's insurer, is directly liable for the damages that Lindsey Grasis sustained. Docket No. 71. Specifically, the Second Amended Complaint claims that WIN failed to exercise reasonable care when it hired Rodríguez and failed to perform background checks on him. *Id*. Cooperativa counters that the policy that it issued to WIN includes an

abuse/molestation exclusion that should be enforced.

The analysis mirrors the one we carried out to examine the policy issued by MAPFRE to Consejo, which was discussed in the R&R at Docket No. 387. Cooperativa avers that there is no coverage because the claims against WIN fall squarely into the second modality of the exclusion: the negligent employment or supervision prong. Under that modality, the insurance policy would not apply to claims arising out of the negligent employment or supervision of a person for whom WIN is or ever was legally responsible, and who committed actual abuse or molestation on anyone while the victim was in the "care, custody or control" of WIN.

The first requirement is easily met. Cooperativa's insurer, WIN, is being sued on the basis of its negligent employment and supervision of Rodríguez. *See* Docket No. 71 at ¶¶ 80-92. Likewise, since Rodríguez was an employee of WIN, a fact that is undisputed, the latter was "legally responsible" for Rodríguez.

As to the third prong, Cooperativa alleges that the duty of care of Consejo towards Lindsey was "delegated" to WIN through the

contract to provide security services. Cooperativa posits that Consejo's own admissions, and the security industry standards, establish without a doubt that Lindsey Grasis was under the care and control of WIN for purposes of interpreting the language of the policy exclusion. To that end, Cooperativa supplemented its First Motion for Summary Judgment to incorporate excerpts of the deposition testimony of plaintiffs' expert, James Clark. According to Cooperativa, Clark's statements further support the conclusion that Ms. Lindsey Grasis was under the control and care of WIN when she was attacked. Docket Nos. 361 and 361-1.

Despite Cooperativa's reliance in these alleged admissions and in the opinions of Mr. Clark, the interpretation of an insurance policy is normally a question of law for the court. *See Zurich American Ins. v. Lord. Elec. Co. of Puerto Rico*, 986 F.Supp.2d 104, 110 (D.P.R. 2013)(citing *Nieves v. Intercontinental Life Ins. Co.*, 964 F.2d 60, 63 (1st Cir.1992)). Our duty is to construct the terms of the policy, not rely on an expert's witness interpretation of the same. In that aspect, we agree with plaintiffs regarding the need to disregard the substantive content of Cooperativa's motions to

supplement.

We disagree with plaintiffs, however, on their interpretation of the "care, custody or control" language of the policy issued to WIN.  Plaintiffs focus on the uncontested fact that Ms. Grasis "was free to leave or enter her apartment unit on the Ashford Imperial as she saw fit," Plaintiffs' SUF § 51, a phrase copied exactly from the Puerto Rico Court of First Instance's findings in *Perales-Cruz,* Case No. KLCE201500356,  2015 WL 3488871 (PR Court of Appeals, April 30, 2015). Because she was not restricted in her movement, plaintiffs conclude that she was not under the care, custody, or control of WIN. As we expressed in our R&R at Docket No. 387, we will not ascribe the "care, custody or control" phrase the meaning that plaintiffs endorse because the facts in *Perales-Cruz* are distinguishable.[1] Instead, we look to *Valley Forge Ins. Co. v. Field,* which interpreted the plain meaning language of "care" as

---

**1.**   In the R&R, we explained that, unlike the plaintiff in *Perales,* Ms. Grasis was not assaulted in her apartment, but on the roof of the building, which is a communal element. Hence, the fact that Ms. Perales "had absolute freedom to determine who went into her apartment,"*Perales-Cruz,* 2015 WL 3488871 at n. 5, cannot be relied upon here, as it was in *Perales-Cruz.*

being under the "charge, supervision, management: responsibility for or attention to safety and well-being."670 F.3d 93,  99 (1st Cir. 2012). Based on these principles, the *Valley Forge* court ultimately held that the victim was in the care of the insured as "a long-term patient" and affirmed the application of the exclusion clause. *Id*. at 105.

Applying that language here, we conclude that Lindsey was under the care, custody and control of WIN because WIN, as well as Ashford Imperial, had responsibility for her safety and well-being. Lindsey was a tenant of Ashford Imperial and WIN had contracted to provide security to Ashford Imperial and its residents. Therefore, we find that the policy exclusion bars coverage for the acts committed by Rodríguez against Grasis.

**(B) Second Motion for Summary Judgment**

Notwithstanding whether the exclusion applies or not, Cooperativa claims that summary dismissal in its favor is warranted because: (1) WIN did not comply with its contractual duty under the insurance policy to cooperate with the defense of its case; (2) WIN is not vicariously liable for the acts of Rodríguez;

and (3) Rodríguez' acts were not foreseeable to WIN. Furthermore, Cooperativa avers that plaintiffs cannot collect from defendants the damages attributable to WPI and Rodríguez because the claims against them are time-barred.

**(i) WIN failed its contractual duty to assist**

According to Cooperativa, WIN was contractually obligated under the policy to cooperate with the investigation of plaintiffs' claims. Absent that cooperation, Cooperativa is relieved from liability. For support, Cooperativa relies on a First Circuit case, *San Juan v. Great American Ins. Co.*, 813 F.2d 520, 521 (1st Cir. 1987). In *San Juan*, the First Circuit specifically averred that an insurer's fault in fulfilling its cooperation duty "does not relieve [the insurer] from liability" absent material and substantial prejudice to the insurer. *San Juan*, 813 F.2d at 521.

We believe that Cooperativa has not established material and substantial prejudice due to WIN's default. It is undisputed that Cooperativa had knowledge of the pendency of the claim and has had time and opportunity to investigate it, even prior to WIN's default. Evidence of the same is that, on April 8, 2013, Cooperativa

sent WIN a letter denying coverage due to the Policy's Abuse and Molestation Exclusion. To determine whether the policy exclusion applied or not, Cooperativa must have been aware of the facts of the claim and must have carried out, at the least, a basic investigation. WIN's default was entered more than two years after that letter. Docket No. 230. Therefore, Cooperativa is hard-pressed to demonstrate that it was materially and substantially prejudiced in defending the claims because of WIN's default.

### (ii) WIN does not respond for the criminal acts of Rodríguez under Article 1803 of the PR Civil Code

A review of the Second Amended Complaint, Docket No. 71, reveals that plaintiffs did not make claims against WIN under Article 1803 of the Puerto Rico Civil Code. Neither does the Crossclaim filed by Consejo, Docket No. 73.

Therefore, there is no need to discuss the dismissal of a cause of action that was not raised.

### (iii) WIN does not respond for the criminal acts of Rodríguez under Article 1802 of the PR Civil Code

Article 1802 states that "[a] person who by an act or omission

causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A plaintiff must prove three elements to support a claim for damages under Article 1802: "first, proof of the reality of the damage suffered; second, a causal relation between the damage and the action or omission of another person; and third, said act or omission is negligent or wrongful." *Muñiz-Olivari v. Stiefel Laboratories,* 441 Fed.Appx. 4, 6 (1st Cir. 2011)(citations omitted).

Under Article 1802, a person or entity may face civil liability for criminal acts committed by a third person. *Montalban v. Centro Com. Plaza Carolina,* 132 D.P.R. 785, 792-795 (1993)(discussing several Puerto Rico Supreme Court cases upholding that principle). The crux of the inquiry is whether the criminal action was foreseeable. *Id.* In *Estremera v. Inmobiliaria Rac Inc.,* 109 D.P.R. 852 (1980), for example, the Supreme Court of Puerto Rico held that a hotel--which "basically substitutes a home"-- a hospital, and a school, have a duty to to "maintain a reasonable measure of security for the protection of their guests, patients and students, contrary to a contractor or a business whose scope of activity does

not encompass the need to provide said protection." *Id*. at 855–856. Similarly, in *Elba A.B. v. Universidad de Puerto Rico*, 125 D.P.R. 294, 320-21 (1990), in which a plaintiff was assaulted and raped at the University of Puerto Rico, the court held that the University had failed to discharge its duty to provide adequate security to its students.

With that legal framework in mind, we turn to plaintiffs' allegations against WIN. Plaintiffs claim that the foreseeability element is present here because WIN failed to properly vet Rodríguez, despite his criminal record. Rodríguez had previously been suspended from the PRPD for committing illegal acts and had complaints for domestic violence. Docket No. 46 at ¶¶80-91. Furthermore, plaintiffs posit that WIN hired Rodríguez even though he lacked a private detective license and, thereafter, failed to perform periodic background checks on Rodríguez. *Id*. These omissions, they claim, constitute violations of Article 1802 of the Puerto Rico Civil Code.

Cooperativa counters that the acts of Rodríguez were not foreseeable to WIN because none of his prior conduct was sexual

in nature. Hence, WIN could not have foreseen that Rodríguez would commit sexual assault against Lindsey.

Other courts that have grappled with similar factual scenarios have rejected Cooperativa's view. Foreseeability does not depend on crystal ball-precision,[2] but rather looks into whether the individual "should have foreseen consequences of the kind that in fact occurred."*Smith v. Williams Hospitality Management Corp.*, 950 F.Supp. 440, 446 (D.P.R. 1997)(citations omitted). Notwithstanding the nature of the relationship between the parties, "there is liability only if the defendant is negligent in not guarding against the possible crime—which is to say, if the foreseeable risk is an unreasonable one, in the light of the burden of taking precautions." *Estremera*, 109 D.P.R. at 858; *see also, Rodriguez-Quiñones v. Jimenez & Ruiz*, 402 F.3d 251, 255 (1st Cir. 2005)(finding that lessor had a duty to provide security to doctor who was robbed and raped in the facilities); *Saracco v. Consejo de Titulares del Condominio Coral Beach*, Civ. No. 91–2632(JAF), 1993 WL 99274, at

---

**2.**  "Foreseeability does not require that the precise risk or exact harm which occurred should have been foreseen and/or anticipated." *Smith*, 950 F.Supp. at 446.

*6 (D.P.R. March 18, 1993) (citing *Estremera*, 109 D.P.R. at 858, n.6) ("Puerto Rico law requires that a landlord provide some measure of security for tenants and guests.")

Considering the record before us, we find that there are controversies of material fact regarding the issue of foreseeability. Rodríguez' previous record of criminal conduct and misbehavior, though not identical in nature to his later actions, could lead a reasonable jury to conclude that WIN was negligent in failing to anticipate what eventually transpired. Contrary to what Cooperativa asserts, such an analysis should be undertaken by a jury. At the summary judgment stage, the judge's role is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial. *DeNovellis v. Shalala*, 124 F.3d 298, 308 (1st Cir. 1997)(quoting *Anderson*, 477 U.S. at 249). Such a genuine issue is present here. Therefore, we defer to the jury on the question of WIN's liability under Article 1802.

**(iv) Plaintiffs cannot collect any damages attributable to Rodríguez**

As a final request, Cooperativa asks the Court to hold that plaintiffs cannot collect from defendants any damages attributable to Rodríguez, or WPI, because the claims against them are time barred. That issue was already addressed in the R&R at Docket No. 387. Our recommendation was to declare the Third Party Complaint against WPI to be time-barred. In addition, we recommended that, in light of *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 D.P.R. 365, 389 (2012), the plaintiff be precluded from recovering the portion of responsibility attributable to the tortfeasor that was not timely sued. Once liability is established, the portion, if any, attributable to that tortfeasor, should be deducted from the totality of the damages awarded and the

plaintiff would receive indemnification for the value of the resulting difference. *Id.* at 210-11.

By the same token, since Rodríguez was never sued here, any action against him is time-barred. Accordingly, any portion

attributable to Rodríguez, if any, should be deducted from the totality of the damages awarded.

**VI. Conclusion**

For the reasons we have detailed, we recommend that summary judgment be granted on the coverage issue.

However, we recommend that the second motion for summary judgment be denied because Cooperativa has not shown that it suffered prejudice in defending the action as a result of WIN's default, and because the issue of foreseeability to establish WIN's liability is a matter best left to the jury.

IT IS SO RECOMMENDED.

The parties have seven days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 17th day of March, 2017.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES MAGISTRATE JUDGE