| | |
|---|---|
| LINDSEY GRASIS, ET AL., | |
| Plaintiffs, | |
| v. | CIV. NO.: 13-1226 (PAD/SCC) |
| WIN ACCESS INC., ET AL., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Consejo de Titulares Condominio Ashford Imperial ("Consejo") is asking the court to resolve the claims against it summarily. Docket No. 329. Plaintiffs oppose the request. Docket No. 353. For the reasons we detail in this Report and Recommendation, we recommend that the motion for summary judgment be granted in part, and denied in part.

### I. Background

Plaintiff Lindsey Grasis was a college student participating in a study-abroad program in Puerto Rico. This action arises

from the rape she suffered on April 14, 2012, at the Ashford Imperial Condominium, ("Ashford Imperial"),where she was residing as part of the program. Ashford was the choice of residence by the Worcester Polytechnic Institute, ("WPI"), which was the school she was attending. WPI entered into a short-term rental agreement with Sea Breeze Apartment Rentals, Inc., ("Sea Breeze"), to receive services from Sea Breeze. WPI faculty and students would be lodged at Ashford Imperial while participating in the study abroad program in Puerto Rico.

The aggressor was William Rodríguez, an employee of Win access, Inc., ("Win"), a security agency hired by Consejo to provide security services. On the day of the assault Rodríguez was stationed in the lobby of the Ashford Imperial and convinced Lindsey to accompany him to the rooftop of the 26-story-high building, where he raped her against the railing.

Lindsey and her parents seek damages for their pain and suffering as a result of the rape. The claims are asserted in the Second Amended Complaint, Docket No. 71, against: Win; Consejo; Sea Breeze; Cooperativa de Seguros Multiples, ("Cooperativa"); Universal Group, Inc., ("Universal"), and MAPFRE PRAICO Insurance Company, ("MAPFRE"). Consejo

filed cross claims against MAPFRE, Win, and Cooperativa, Docket Nos. 72, 73, and 113 and filed a Third Party Complaint against Worcester Polytechnic Institute, ("WPI"), Docket No. 74. Defendants and cross defendants answered the Second Amended Complaint, and Cross Claims. Docket. Nos. 75, 83, 96, 97, 106, 107, 122, 183, 223 and 224. WPI answered the Third Party Complaint. Docket No. 115.

## II. Findings of Fact

In accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations. *See* Local Rule 56(e). The court has disregarded all conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). The following factual findings are taken from the parties' Statements of Uncontested Facts, ("SUF's"), and supporting documentation. The Court made some previous findings of fact in its Report and Recommendations at Docket Nos. 387, 388, and 396, which shall be incorporated by reference here. The Court makes the following

additional findings of fact, which are specific to the claims made by Consejo in its motion for summary judgment:

**General facts related to Ashford Imperial**

1. The Ashford Imperial is a condominium "subject to the Horizontal Property Law of 2003." *See* Docket 71, Second Amended Complaint, ¶¶ 24-25.

2. Consejo has legal personality. *See* Docket 71, Second Amended Complaint, ¶ 9.

3. The President of Consejo, Abraham Joaquin Hidalgo, who has been president since 2009, was unaware of who WPI was until after Lindsey's sexual assault. Though he did know that some students stayed at the Ashford Imperial since several years back. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 9, lines 3-7; pg. 124, lines 12-21, and pg. 159, lines 5-8.

4. Consejo does not derive any revenue from commercial activities at the condominium. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 40, lines 3-5.

**Facts related to Consejo's contract with Win**

5. In 2005, Consejo hired Preventive Detective & Investigations, Inc., ("PDI"), to provide security services at the condominium. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 34, lines16-20; pg. 65, lines 13-20.

6. Consejo performed a screening on PDI and evaluated various proposals prior to it being chosen. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 34, lines 16-25.

7. During the time that PDI provided services to the condominium, no complaints were made as to its performance as a security company. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 160, lines 12-16.

8. In fact, Consejo was satisfied with the services that had been provided by PDI. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 160, lines 17-21.

9. Mr. Julio Pacheco, principal of PDI, informed Consejo that they were changing the name of the company to Win Access because they wanted to provide new security services, which included video surveillance. *See* Docket No. 329-3,

Deposition of Abraham Joaquin, pg. 66, lines 5-9; pg. 161, lines 6-9.

10. Though at the time Consejo understood that it was merely a name change, they later found out that PDI had actually filed for bankruptcy. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 66, lines 6-16; pg.161, lines 6-9.

11. PDI and Win were owned and operated by Mr. Julio Pacheco ("Pacheco"). *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 29, lines 18-22.

12. Prior to contracting Win, the Board of Directors of the Ashford Imperial interviewed Mr. Pacheco at a Board of Directors meeting, wherein he was requested to provide evidence of Win's security guard license, among other documents, was asked about his employees, and was required to endorse a hold harmless to Consejo. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 67, lines 8-25; pg. 68, lines 1-18; pg. 69, lines 5-25; pg. 70, lines 1-3.

13. During said meeting, Mr. Pacheco represented to Consejo that the security guards to be provided to the Ashford

Imperial were qualified and that Win performed a screening of its employees. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 69, lines 5-12.

14. Abraham Joaquin Hidalgo admitted, however, that since Win was basically the same company as PDI, no reference calls were placed as part of the signing of the contract with Win. He also indicated that although Consejo took the cost into account, it was "basically a continuity of the existing contract" with PDI. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 87, lines 2-16.

15. On October 15, 2009 Consejo entered into a Professional Services Agreement with Win for the rendering of security guard services at the Condominium. The hiring of Win Access was approved and ratified by the entire board and titleholders. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 64, lines 2-9; *see also,* Certified translation of Professional Services Agreement (herein, "the Contract"), at Docket No. 329-5.

16. The Contract was drafted and presented by Win to members of Consejo and the Ashford Imperial Board of

Directors. It was reviewed and analyzed and changes were made prior to its signing. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 67, lines 20-25, pg. 68, lines 2-10.

17. The Contract was for a one-year term and was renewed automatically every year. During that time, Consejo did not request a proposal from any other agency. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 84, lines 19-24; pg. 85, lines 12-19.

18. The Contract was in effect on April of 2012, when Lindsey Grasis was raped. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 105, lines 6-9.

19. Pursuant to the Contract, Win is an independent contractor. Docket No. 329-5, ¶ Eleventh.

20. At some unidentified point in time, Consejo requested a certification that Win's employees were in compliance with Puerto Rico rules and regulations. A general certification was provided by Win. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 88, lines 19-25, pg. 89, lines 5-23.

21. In the Contract, Win represented to Consejo that it had

knowledge of and complied with state and federal laws that regulate companies engaged in security services. *See* Docket No. 329-5, at pg. 1.

22. Win agreed to provide any and all security guard and/or remote monitoring services related to the services provided for in the Contract. *See* Docket No. 329-5, at pg. 1.

23. Win further agreed to train its personnel with respect to the rules and conditions in effect at the condominium, without affecting state and federal laws and/or regulations and the internal procedures of Win. *See* Docket No. 329-5, at pg. 1.

24. Pursuant to the Contract, Consejo is "entitled to request the replacement of any guard that the administration believes is not performing his duties satisfactorily or that it disqualifies for a reasonable eventuality." Consejo "shall prepare a written report about the officer, stating the reasons for his or her replacement, and Win shall replace the officer within a maximum of 24 hours." *See* Docket No. 329-5, at ¶ SEVENTH.

25. Win assumed responsibility for the natural consequences of its employees' acts. *See* Docket No. 329-5, at ¶

ELEVENTH.

26. Consejo requested from Win a copy of its private security agency's license with the Puerto Rico's Police Department. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 68, lines 11-18.

27. On March 21, 2012, Win received by the Puerto Rico Police Department ("PRPD") its license to conduct services as a private security agency. *See* License issued by the PRPD for Win, Docket No. 329-6.

28. Prior to April of 2012, Consejo had never received a complaint about Win's operation. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 68, lines 17-25; pg. 69, lines 1-4.

29. Win only provided surveillance services for a "very short period of time because it never worked properly." *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 58, lines 7-25.

30. At no time prior to Lindsey's sexual assault, did Consejo conduct a background check of the security guards working at

Ashford Imperial. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 91, lines 23-25, pg. 92, lines 2-5.

31. Prior to the rape of Lindsey, Consejo did not know what, if anything, Win did to assess the background of the security guards on duty at the Ashford Imperial. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 92, lines 15-21. 47.

32. Consejo was unaware that William Rodríguez was a former PRPD officer. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 125, lines 15-19.

33. Prior to April of 2012, Consejo was unaware that William Rodríguez had been charged for selling ammunition that belonged to the PRPD. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 125, lines 21-25; pg. 126, lines 4-23; pg. 127, lines 4-15.

34. Prior to April of 2012, Consejo was unaware of any problems, wrongdoings, or criminal record of William Rodríguez. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 158, lines 13-25; pg. 159, lines 1-4.

35. Prior to April of 2012, Consejo had never received a complaint regarding William Rodríguez' behavior. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 122, lines 20-24; pg. 123, line 1; pg.158, lines 23-25; pg. 159, line 1; *see also*, Deposition of Yvonne Meléndez Rivera, Docket No. 329-7, pg. 104, lines 7-18.

36. The Contract was terminated in 2012, after Lindsey's rape. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 54, line 4.

37. Yvonne Melendez Rivera, administrator of Ashford Imperial since January 2012, assumed that the security guards were informed of the procedures they were expected to follow. *See* Deposition of Yvonne Melendez Rivera, Docket No. 329-7, pg. 24, lines 10-25.

38. Consejo did not request and Win did not provide the "certified, monthly report" containing any incidents that occur at the Ashford Imperial, as provided in the Contract. *See* Contract, Docket No. 329-5, at ¶ FOURTH; *see also*, Deposition of Yvonne Melendez Rivera, Docket No. 329-7, pg. 48, lines 7-

12.

39. Yvonne Melendez Rivera admitted that she was responsible to verify that the security guards performed their jobs, complied with all the procedures, and reported to the administration any situations in the building. *See* Deposition of Yvonne Melendez Rivera, Docket No. 329-7, pg. 22, lines 8-15.

**Facts related to the security measures in the building**

40. By April of 2012, there were magnetic locking systems to enter the building. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 53, lines 1-11; pg. 54, lines 9-20.

41. By April of 2012, there were sixteen (16) cameras installed throughout the condominium, including two at the lobby, one in the hallway in front of the elevator, one on each elevator, and one on the stairs providing access to the rooftop. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 55, lines 14-20; pg. 56, lines1-2; Deposition of Yolanda Justa Moral, pg. 121, lines18-21.

42. No cameras were installed on the rooftop. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 56, lines 2-4.

43. There was a monitor located at the security guard station at the lobby of the condominium, where the security guard could view all images of the sixteen (16) cameras. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg.155, lines 20-25; pg. 156, lines 1-13.

44. There is a video recorder that connects the sixteen (16) cameras and is located at the administrator's office. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 56, lines 5-9.

45. If the security guard turns off the monitor at his/her station, the video recorder will continue to record at the administrator's office, where the security guard does not have access to. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 156, lines 14-17; pg. 62, 9-16.

46. At the time of Lindsey's rape, two cameras were not working properly, one in the elevators, and one in the parking lot. Consejo was aware that the cameras were not working. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 56, lines 15-25; pg. 56, lines 1-13.

47. On April of 2012, the access to the rooftop of the

condominium was under lock and key. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 164, lines 19-23.

48. As part of his duties as a security guard, Rodríguez had access to the rooftop and was expected to conduct preventive rounds on the rooftop. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 73, lines 13-23; pg 74, line 1.

49. Prior to April of 2012, the Ashford Imperial Condominium Association had never received a complaint about security guards entering the rooftop area for reasons other than doing the job they were hired to do. *See* Docket No. 329-3, Deposition of Abraham Joaquin, pg. 156, lines 18-23.

### III. Analysis

In their Second Amended Complaint, plaintiffs allege that Consejo had a duty to provide adequate security measures to "guests, residents, and invitees" at the Ashford Imperial, and that it negligently failed to perform that duty. Docket No. 71 at ¶ 65. In fact, plaintiffs claim that Consejo was an "innkeeper" and thus, it had a heightened duty of care towards Lindsey since she was temporarily residing at Ashford Imperial. *Id.* at

¶ 66. Plaintiffs seek remedies under Articles 1057[1] and 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3021 and 5141.

**(1) Consejo's duty towards Lindsey Grasis**

Under Article 1802 of the Civil Code of Puerto Rico,"[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."P.R. Laws Ann. tit. 31, § 5141. To recover on a negligence theory, a plaintiff suing for personal injuries under this statutory provision must establish "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct."*Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)(citing *Sociedad de Gananciales v. Gonzalez Padin*, 17 P.R. Offic. Trans. 111, 125 (1986)). These

---

**1.**  Article 1057 describes what constitutes fault or negligence and provides, in pertinent part, that "[s]hould the obligation not state what conduct is to be observed in its fulfilment, that observed by a good father of a family shall be required."

requirements cannot be satisfied unless the plaintiff proves, inter alia, that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care). *See Coyne v. Taber Partners I*, 53 F.3d 454 ,459-60 (1st Cir. 1995).

From the onset of the case, plaintiffs have averred that Consejo owed Lindsey a heightened duty of care because its functions were comparable to those of an "innkeeper." Docket N0. 71, ¶ 66. Under Puerto Rico law, a hotel-keeper owes its guests a heightened duty of care and protection. *Woods-Leber*, 124 F.3d at 51. Consejo, however, rejects the innkeeper label.

To determine whether Consejo is an"innkeeper" we look to the statutory definition, which reads: "any person, firm, corporation, or other type of business organization, *engaged for profit*, in the operation of a hotel, ..."P.R. Laws Ann. tit. 10 § 711(b)(emphasis supplied). In turn, "hotel" is defined as "any place of shelter operated for profit, providing protection for persons and property, and shall include any building or group of buildings under a common management where the general

public is admitted, where all who conduct themselves properly and who are able and ready to pay for their lodging are received, if there is accommodation for them, and who, while there, are supplied lodging and meals, and such lodging, service and other amenities] as the establishment may afford at the rates established by the hotel..." P.R. Laws Ann. tit. 10 § 711(a).The term "hotel" includes "short-term rental condominiums." *Id*. Finally, the term "guest" includes "tenants (independently as to the form of lease contract, if any)". *Id*. at § 711(d)(1). It is worth mentioning that the First Circuit has extended the "innkeeper" title to entities that do not fulfill the traditional "hotel" role. In *Coyne*, the First Circuit held that a taxicab operator who picked up a guest at a hotel was an innkeeper and hence, owed a higher duty of care to its passengers. *Coyne,* 53 F.3d at 458.

Guided by that framework, we go over the facts pertinent to this inquiry. It is undisputed that Lindsey Grasis was housed in one of the apartments at the Ashford Imperial. It is also undisputed that she was occupying a short-term rental unit,

which falls under the definition of "hotel." But Consejo cannot be said to be "engaged for profit" in the operation of the Ashford Imperial. Consejo is nothing more than an association of the owners of the apartments in Ashford Imperial.[2] Its duties and responsibilities are not conducted for profit, a fact that plaintiffs do not dispute. Because it lacks an essential element of the innkeeper requirements, we find that Consejo is not an "innkeeper".

### (2) Consejo's liability for the actions of WIN

Plaintiffs sued Consejo on the theory that it had a duty to provide security to the tenants, guests and invitees at the Ashford Imperial, and that it was negligent in the performance of that duty. Docket No. 71 at ¶ 65-68. Plaintiffs also allege that Consejo was negligent in hiring Win as its contractor for the purpose of providing security services and in failing to perform background checks on the individuals who worked as

---

**2.** *See* Second Amended Complaint, Docket No. 71, at ¶9 ("Consejo...composed of the tenants of the Ashford Imperial Condominium,...is the administrator of the referenced condominium...").

security guards at the Ashford Imperial. *Id.* at ¶¶ 75-77.

Consejo argues that it cannot be held liable for Win's actions or omissions insofar as:(1) Consejo exercised due diligence in hiring Win; (2) Consejo did not select Rodríguez and had no duty to verify his fitness as a security guard and; (3) Lindsey's sexual assault was not foreseeable to Consejo.

Puerto Rico law defines negligence as the failure to exercise due diligence to avoid foreseeable risks. *See Coyne*, 53 F.3d at 459; *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 971-72 (1st Cir.1991). In that sense, Consejo's arguments are mostly focused on the core issue of foreseeability. To rule in Consejo's favor at the summary judgment stage, we must find that Consejo did not fail to exercise its duty towards tenants of the Ashford Imperial and that the attack that Lindsey suffered was not a foreseeable risk.

According to Consejo, "for years" it delegated the security of the building to two agencies, one of which, PDI, is the predecessor of Win. During the time that PDI provided services to the condominium, no complaints were made

regarding its performance. Furthermore, Consejo posits that Mr. Julio Pacheco, PDI's principal, made representations that its guards were qualified and that they had performed the necessary screening. Given these representations, the guarantees made in the contract, and Consejo's good experience with PDI over the years, Consejo could not have foreseen that Win would hire a person who ended up raping a resident. Consejo further avers that it was unaware that Rodríguez had been a former police officer, and that he had been charged with selling ammunition, and suspended from the PRPD. And that, in any case, Consejo was not entrusted with selecting the guards or verifying their suitability to perform such duties.

"Forseeability does not require that the precise risk or exact harm which occurred should have been foreseen and/or anticipated," but rather looks into whether the individual "should have foreseen consequences of the kind that in fact occurred." *Smith v. Williams Hospitality Management Corp.*, 950 F.Supp. 440, 446 (D.P.R. 1997)(citations omitted). Notwithstanding the nature of the relationship between the parties,

"there is liability only if the defendant is negligent in not guarding against the possible crime—which is to say, if the foreseeable risk is an unreasonable one, in the light of the burden of taking precautions." *Estremera v. Inmobiliaria Rac, Inc.*, 9 P.R. Offic. Trans. 1150, 1157 n.6 (1980).

A review of the record leads us to conclude that there are substantial factual disputes as to Consejo's negligence in failing to safeguard Lindsey Grasis against her attacker. The starting point of our analysis will be the contract between Consejo and Win, which charged the latter with providing security services and surveillance to the Ashford Imperial. It is undisputed that Consejo had a previous contract for security services with PDI. At some point, PDI's principal and owner informed Consejo that the company would change its name and expand to include surveillance services. Unbeknownst to Consejo at the time, PDI was, in fact, filing for bankruptcy. From the parties' SUFs, some issues arise regarding the degree to which Consejo conducted a proper screening of PDI or Win. Consejo admitted that it did not evaluate other proposals, and  that they simply

viewed the new contract with Win as an extension of the one they had with PDI. The contract was set up to be renewed automatically in one-year terms. Even when confronted with information that undermined PDI's representations, such as finding out that PDI had actually filed for bankruptcy, and despite numerous difficulties with its much-announced surveillance system, Consejo kept renewing the Contract.

Similarly, there are facts on the record that challenge Consejo's argument regarding the nonexistence of an independent duty to oversee Win's employees. Pursuant to the Contract:

> SEVENTH:... C.A.I. is entitled to request the replacement of any guard that the administration believes is not performing his duties satisfactorily or that it disqualifies for a reasonable eventuality. C.A.I. shall prepare a written report about the officer, stating the reasons for his or her replacement, and W.A.I. shall replace the officer within a maximum of 24 hours. The report and change shall be made in strict confidentiality to protect our clients. C.A.I agrees to report to W.A.I. any irregularities or events that may occur and may affect the surveillance services provided.

*See* Docket No. 329-5.

This contract provision gives Consejo removal power over any guard that it does not believe is performing adequately. As written, once Consejo asks the guard to be replaced, Win *shall replace* the officer within 24 hours, meaning that it is obligated to do so.

Other parts of the Contract cement the conclusion that, contrary to its claims, Consejo had substantial discretion in the security measures implemented at Ashford Imperial. For example, Win agreed to train its personnel in accordance with the rules of Consejo and Consejo "shall provide to W.A.I. its internal security regulations, which shall become part of this agreement." *Id*. Therefore, the agreement incorporates Consejo's security regulations, which Win's personnel had to comply with. On this issue, Consejo's administrator Yvonne Melendez-Rivera, admitted during her deposition that she was in charge of verifying that the security guards complied with the protocols, completed their rounds and reported any situations or incidents. Nevertheless, from the parties' SUFs the Court could gather that Consejo did not request and Win did

not provide the daily record of incidents that occurred at the Ashford Imperial. In addition, Melendez-Rivera testified that she assumed that the guards knew about the written security protocol procedures, but did not know for sure whether they did. Docket No. 329-5

Lastly, the Contract also states that if a "serious accident or incident" should occur, it must be reported immediately to both Consejo and Win "for an administrative officer to determine what action will be taken." *Id.* at pg 2. If a member of Consejo cannot be reached, Win and its personnel "shall take action to resolve the situation and report the same to Consejo." This language seems to suggest that any course of action following a serious incident is to be devised and implemented by both Win and Consejo.

Reading these provisions together, and seeing as we have no evidence before us regarding the intention of the parties when they drafted the contract, we conclude that there are triable issues of fact regarding Consejo's duty *in vigilando*.

Consejo's argument regarding the foreseeability of

Lindsey's rape fares no better. First, it is undisputed that Rodríguez had a criminal history that included domestic violence. It is also undisputed that the contract between Consejo and Win allowed Consejo to have some form of control over removing guards that did not comply with Consejo's guidelines. Consejo admitted that it did not verify whether the guards were licensed and did not run independent background checks, or even request the ones in Win's possession. Taking these facts into consideration, we believe that there are material facts in dispute regarding the extent to which Consejo could have foreseen Lindsey's rape.[3]

We emphasize that the analysis of negligence requires a weighing of the facts that should be undertaken by the jury. *Estremera.*, 9 P.R. Offic. Trans. at 1159, (discussing how the difficulties in establishing causality "can never be resolved by

---

**3.** Though incidents such as the one at the heart of this case are incredibly unfortunate, they cannot be said to be outside of the realm of possibilities. In fact, the Contract contemplates the occurrence of "serious incidences or incidents (that is, breaking and entering, properly damages, *physical assault*, theft, etc...)"(emphasis supplied) at the Ashford Imperial.

abstract rules" and should instead be analyzed by the trier of fact "based on his convictions and after pondering all circumstances.").

### (3) Damages attributable to WPI or Rodríguez

Consejo avers that even if the Court finds that it can be held liable for what happened to Lindsey, plaintiffs cannot collect the portion of damages attributable to WPI or Rodríguez, because the claims against them are time-barred. Consejo is not the first co-defendant to raise this argument. Both Cooperativa and Sea Breeze made identical claims in their respective motions for summary judgment. Therefore, in our R&R at Docket No. 387, we discussed that argument at length and recommended that the presiding judge find that the Third Party Complaint against WPI is time-barred. In addition, we recommended that, in light of *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 D.P.R. 365, 389 (2012), the plaintiffs be precluded from recovering the portion of responsibility attributable to the tortfeasor that was not timely sued. Once liability is established, the portion, if any, attributable to that tortfeasor, should

be deducted from the totality of the damages awarded and the plaintiff would receive indemnification for the value of the resulting difference. *Id.* at 210-11.

Furthermore in our R&R at Docket No. 388, we applied the same rationale to any claims against Rodríguez and recommended that the Court adopt the above conclusion to claims against that co-defendant as well. At the risk of sounding repetitive, we suggest the same course of action here.

**(4) Allegations regarding deficient security measures**

Lastly, Consejo argues that plaintiffs' allegations based on the allegedly deficient security measures at the Ashford Imperial should be summarily dismissed. Specifically, plaintiffs alleged in their Second Amended Complaint that Consejo was negligent in failing to take measures to secure the condominium's roof, which they could have easily done by installing security cameras and proper lighting in that area. *See* Second Amended Complaint, Docket No. 71 at ¶¶ 70-73.

Consejo argues that plaintiffs do not have sufficient evidence to prove that they "failed to secure the roof" and that

the failure was a proximate cause of Lindsey's injuries. We disagree. On one hand, it is undisputed that Consejo installed several security features, including magnetic locking systems, cameras, a monitor with live images and controlled access to the rooftop. But on the flip side, Consejo admitted that it was aware that two of the cameras were not working, including one in the elevator. Plaintiffs' expert James Clark opined that the "inadequate video surveillance" would have "chronicled the movements of the security officer in the elevator." Docket No. 329-2 at pg. 5.

Viewing the record in the light most favorable to the nonmovant, we believe that a reasonable jury could find that additional security measures on the roof, such as proper lighting and cameras, would have deterred the assailant. Thus, we decline to enter summary judgment in Consejo's favor on this issue.

### IV. Conclusion

For the reasons set forth above, we recommend that the Court grant summary judgment on the issue of Consejo's

heightened duty of care because Consejo is not an "innkeeper" as defined by Puerto Rico law. We also recommend that summary judgment be denied as to the issue of Consejo's negligence because factual controversies exist regarding the foreseeability of Lindsey's sexual assault under the regular negligence standard. The question of whether plaintiffs can recover for the portion of damages attributable to WPI and Rodríguez has already been addressed in our previous R&Rs, and we recommend that the court follow our rationale of denying recovery for those portions. As to the remaining allegations pertaining to the security measures on the building, we recommend denial of summary judgment given the controversies of material fact between the parties.

IT IS SO RECOMMENDED.

The parties have ten days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 28th day of March, 2017.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE